# Ellmaker *against* The Franklin Fire Insurance Co.

6ws439 199 276

The defendant executed an agreement under seal reciting a bond and mortgage for $4000 from B. to the plaintiffs, by which he covenanted, in case a sheriff's sale of the mortgaged premises should not satisfy the amount of the bond with interest and costs, over and above all liens, claims and demands, to pay the difference; and guaranteed the premises free from mechanics' liens. Appended to the specialty was a parol agreement of same date by the plaintiffs that when and so soon as $750 should be paid them in part satisfaction of the bond, the guaranty should be cancelled, provided sufficient releases of the mechanics' liens on the premises should be previously given to them. The plaintiffs afterwards sued out the bond, on which the premises were sold for $2000 and distribution made by an auditor of $552.64 for mechanics' liens, &c. and the balance to the plaintiffs on their mortgage. The plaintiffs brought covenant against the defendant on the specialty to recover the balance of the bond.

*Held*, 1. That covenant was the proper form of action, and that the plaintiffs might give the specialty in evidence without the parol memorandum.

2. That the report of the auditor was evidence to show how much was awarded to the plaintiffs.

3. That the parol agreement, depending, as it did, on an unperformed condition, was not an obstacle to the plaintiffs' demand.

4. That in such action the defendant might set-off a loss under a policy of insurance on the mortgaged premises executed by the plaintiffs to a third person and assigned by him to the defendant.

5. That the want of a direct averment in such plea of interest in the property insured could only be taken advantage of on special demurrer.

An unliquidated cross-demand arising from a distinct and independent contract may be set-off.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of covenant brought by the Franklin Fire Insurance Company of Philadelphia against Hannah Ellmaker, executrix of Levi Ellmaker, deceased. The defendant pleaded "covenants performed, with leave," &c., and also specially, that "on the 20th November 1834, the plaintiffs, in due form of law, executed their policy of insurance to a certain John M'Michael, whereby the said plaintiffs insured against loss and damage by fire, for the consideration therein mentioned, two unfinished three story brick buildings on the east side of Schuylkill Sixth street, between Filbert and Jones streets, to the amount of $3000, or $1500 on each of the said buildings, in case of loss, payable to the said Levi Ellmaker, now deceased, which said policy of insurance was duly assigned with the knowledge and assent of the said plaintiffs, by the said John M'Michael, to the said Levi Ellmaker, during the lifetime of the said Levi, to wit, on the 31st December 1834, and was regularly and duly renewed by the said plaintiffs,

upon the expiration of the time in the said policy mentioned, for the continuance of the insurance therein provided for: and that after the renewal of the said policy of insurance, the two buildings therein mentioned were destroyed by fire within the time during which the said insurance continued, to wit, on the —— day of September 1835, whereby a loss accrued under the said policy, and the renewal thereof to the defendant, to the extent of the sum of $3000 in the said policy mentioned; which said sum of $3000 the defendant now claims to be allowed, defalked, and paid by the said plaintiffs; and this the said defendant is ready to verify," &c.

On demurrer to this plea the court rendered judgment for the plaintiffs.

The plaintiffs gave in evidence a bond and mortgage dated 11th September 1834, given to them by William M. Bozarth, in the penal sum of $8000, conditioned for the payment of $4000: and then offered in evidence the following sealed instrument executed by Levi Ellmaker on the 13th September 1834; to which the defendant objected; but the court admitted it and sealed an exception.

"Whereas, by a certain bond or obligation bearing even date herewith, William M. Bozarth, of the city of Philadelphia, house carpenter, stands bound to the Franklin Fire Insurance Company of Philadelphia, in the penal sum of $8000, lawful money of the United States, conditioned for the payment of $4000 of like lawful money, in one year from the date, with interest at the rate of six per cent. per annum, as is therein expressed; and for the better securing the same has, by indenture bearing even date herewith, conveyed in mortgage to the said the Franklin Fire Insurance Company of Philadelphia, a certain messuage or tenement and lot or piece of ground, situate on the south side of Filbert street, between Schuylkill Sixth and Seventh streets, in the said city, containing in front or breadth 18 feet, and in depth 106 feet, as the same is more particularly described in the said mortgage. And whereas the said sum of $4000 was lent to the said William M. Bozarth, on condition of a guaranty of the same, by Levi Ellmaker, of the city aforesaid, merchant, and in consideration thereof: Now these presents witness that I, the said Levi Ellmaker, in consideration of the premises, and of the sum of one dollar to me paid by the said the Franklin Fire Insurance Company of Philadelphia, the receipt whereof is hereby acknowledged, do, for myself, my heirs, executors and administrators, covenant, grant and agree to and with the said the Franklin Fire Ins. Co. of Philadelphia, that in case the said messuage and lot shall be sold at the sheriff's sale, by virtue of process upon the said mortgage, or otherwise, and shall not produce enough to satisfy the said debt to them of $4000, with the interest and costs, over and above all prior liens, claims and demands whatsoever, I will pay to the said the Franklin Fire Insurance Company, their successors or assigns, so much as shall

be wanting to satisfy the said debt, interest and costs. And I do further covenant and guarantee to the said the Franklin Fire Insurance Company of Philadelphia, that the messuage or tenement aforesaid is free and clear from all liens or claims of mechanics or others, arising from the erection or construction of the said buildings, or from the materials used in the same, so that the security of the said mortgage debt shall not at any time hereafter be impaired or otherwise affected by reason of any lien upon the premises, arising from debts contracted for work done or materials furnished for or in the erecting or constructing of the same."

The plaintiffs then offered in evidence the record of a suit brought in the District Court to December term 1835, by the plaintiffs, against Bozarth on the above bond, showing a judgment therein, the proceedings on it, a sheriff's sale of the mortgaged property, and its purchase by the plaintiffs, and the report of the auditor appointed by the court to distribute the proceeds. The defendant objected to this evidence, but the Judge admitted it and the defendant excepted.

The auditor's report, which was confirmed, stated that the premises were sold for $2000, and appropriated $424.21 to the payment of mechanics' liens, and $128.43 for costs, taxes, &c., and the balance ($1447.36) to the plaintiffs on account of their judgment.

The defendant gave in evidence the following agreement, appended to the foot of the instrument given in evidence by the plaintiffs:

It is agreed that when and so soon as the sum of $750 shall be paid to the Franklin Fire Insurance Company of Philadelphia, in part satisfaction of the principal of the above-mentioned bond, the foregoing guaranty shall be cancelled, and the paper delivered up to the aforesaid Levi Ellmaker; provided, that sufficient releases of the liens of the mechanics and others concerned in the erecting or constructing of the said building, shall previously thereto be produced and filed in the office of the said company.

C. N. Bancker, *Sec'ry.*
*Sept.* 13, 1834.

The defendant requested the judge to charge the jury:

1. That the action of covenant cannot be sustained on the evidence in this case, but that assumpsit is the proper form of action.

2. That the plaintiffs have been fully satisfied in any claim they have on the defendants, by the sale of the property, the receipt of $1447.36, and the legal extinguishment thereby of the liens referred to.

3. That at all events, according to the true construction of the whole instrument, the plaintiffs can only recover the $750 with interest.

The Judge refused to charge the jury as requested, but charged

them that the law was with the plaintiffs upon these several points:

The defendant excepted to the charge.

Errors assigned:

1. Because the court admitted the plaintiff to give in evidence a part of the instrument in question, and to exclude the remainder.

2. Because the court admitted the auditor's report to be read in evidence of the facts therein stated.

3. Because the court decided that covenant was the proper form of action, and not assumpsit.

4. Because the court charged the jury, that the plaintiff had the right to recover in this suit the remainder of the sum of $4000, with interest, after deducting the sum of $1447.36 received by the plaintiff from the sheriff's sale of the property in question.

5. Because the court refused to charge the jury, that the plaintiff could, under the circumstances, only recover the sum of $750, with interest.

6. The court erred in rendering judgment for the plaintiffs, on the demurrer to the plea of set-off.

*Rawle* and *Randall*, for the plaintiff in error, contended that the auditor's report was not evidence, being *res inter alios acta*. That the proper action would have been assumpsit and not covenant, inasmuch as the sealed instrument was altered and modified by the parol agreement annexed. *Vicary* v. *Moore*, (2 *Watts* 451); *Vaughn* v. *Ferris*, (2 *Watts & Serg*. 46). That the court erred in sustaining the demurrer, as the matter contained in the plea was a subject of defalcation under the act of 1705. *Kachlein* v. *Ralston*, (1 *Yeates* 571); *Gogel* v. *Jacoby*, (5 *Serg. & Rawle* 122); *Cornell* v. *Green*, (10 *Ib*. 14); *Hubler* v. *Tamney*, (5 *Watts* 51).

*T. I. Wharton* and *J. M. Scott*, contra. The auditor's report was evidence for the only purpose for which it was offered, viz., to show how the monies were appropriated. Covenant was the proper action, the annexed agreement being a condition in defeasance of the instrument, which it was incumbent on the defendant to take advantage of by plea. *M'Combs* v. *M'Kennan*, (2 *Watts & Serg*. 216); *Green* v. *Roberts*, (5 *Whart*. 84). The set-off was not admissible, being unliquidated damages, arising out of another transaction; and the plea was defective in not alleging that the defendant had an interest in the policy. *Shaw* v. *Badger* (12 *Serg. & Rawle* 275); *M'Fadden* v. *Erwin* (2 *Whart*. 39).

The opinion of the Court was delivered by

Gibson, C. J.—Had the auditor's report been received without the rest of the record, it might have been deemed error; but the whole was given entire, and to show what? Not the truth of any fact adjudicated, but how much of the money raised from the

mortgaged property was paid on the judgment. The order of distribution was itself an independent fact, and, for the end proposed, evidence against, not only parties or privies, but all the world.

The question in regard to the contract declared on, is raised by the first and third exceptions. In form it is a covenant of guaranty, to which is appended a parol agreement bearing the same date, and executed, it is to be presumed, at the same time. Were it executed subsequently, it would be without consideration, and the original covenant would be unaltered in its character or its terms. But granting the execution of the covenant to be a consideration for the parol agreement, in what respect does the one impinge on the other? Where writings are executed at the same time and on one common subject, they are to be interpreted so as to be brought into concord with each other as consistent parts of a whole. Now the guarantor *covenanted* to make up the difference should the mortgaged promises fall short of the debt after payment of the mechanics' liens; and the mortgagee *promised* that the guaranty should cease as soon as the liens should be extinguished and a particular part of the debt paid. But it was to stand good in the meantime. How then can its nature, as a specialty, have been altered, or its hue changed by the shadows of coming events? The parol agreement was not to modify the covenant, but to regulate the application of it as a security. Circumstances might happen which would make it unnecessary, and in that event the guarantor was to be released from it. In *Vicary* v. *Moore* the test of collision was the capacity of the two contracts to be executed together. Where that can be done, the one is not substituted for the other; and where there is in fact substitution, it operates as abandonment, the specialty being relinquished except as matter of reference for the terms of the parol contract which has supplanted it. Now it cannot be supposed that this covenant was intended to be relinquished as a specialty the moment it was made; for had it been designed to play the humble part of a parol promise, it would have been put into the garb of one. The action was properly brought in covenant, therefore, and the plaintiff was properly allowed to introduce the specialty without the parol memorandum, which contained nothing but matter of defence.

Its effect as such, however, was not what the guarantor attempted to assign to it. It was a defeasance, but the condition of it had not been performed. The mechanics' liens had indeed been extinguished, but not by Bozarth, the debtor, as was contemplated, or by the defendant, his surety. They were to be discharged in ease of the mortgage, instead of which they were discharged out of the proceeds of the premises sold subject to them, and in prejudice of the mortgagee; consequently in accordance with neither the letter nor the spirit of the proviso. The plaintiff consented to take the property alone as security for a

part of the debt, provided the other part of it and the prior liens were paid by the defendant or his surety. The liens have indeed been paid; but how? Not by the debtor or his surety, but by the mortgaged premises at the plaintiff's expense. The jury were properly instructed that the agreement, depending as it did on an unperformed condition, was not an obstacle to a verdict for the plaintiff's demand.

But we are unable to sustain the demurrer to the plea of set-off, which the court should have overruled, and, had it been required, allowed to be withdrawn in order to meet the plea on its merits.

The reverse of the principle assumed on the first ground taken at the argument, has been ruled at the present term: a conclusion towards which our decisions have long been tending. We have gradually enlarged the effect of our act for defalcation by discarding notions derived from the English statute of set-off, till we have brought it to the line of the enactment. There is not a word in the English statute about mutual dealing; or about being indebted by bonds, bills, bargains, promises, or accounts; or about the defendant's being unable to gainsay the deed, bargain, or assumption—expressions in ours which indicate an unsettled course of dealing—nor is there any thing in it to show that the words, "mutual debts," the only descriptive ones contained in it, were not to have their technical effect. In our statute, too, the words "debt *or* sum demanded," seem to have been introduced intentionally to enlarge the purview. True it is that both statutes are susceptible of the same construction without much violence to the words, and that we have been in the habit of receiving English precedents in questions of set-off: but it has seemed that neither justice nor convenience called on us to depart from the obvious and natural meaning of our own. If an unliquidated cross demand may be set-up when it has sprung from the same transaction—and we have constantly ruled that it may—why may it not be set up when it has sprung from a distinct and independent contract? The confusion incident to the trial of distinct issues in the same action is no greater where the demands are independent of each other than where they are connected; nor more embarrassing where they are indefinite than where they are liquidated; nor more complicated where they are set against each other than where they are joined in the same declaration or in consolidated actions. The practical difference between a debt properly so called and an indefinite demand of money resting in contract, is more seeming than real. A bond for the payment of a sum certain is strictly a debt and a subject of set-off; yet to ascertain the amount due on it when reduced, as it sometimes is, by failure of consideration or a variety of causes, is often one of the most difficult duties that can be committed to a jury. When its definite character is so often deceptive, what better claim has

it to be made matter of set-off than a policy of insurance? The trial of cross demands in the same action saves expense and the vexation of paying out money to get it back at the risk of losing it by insolvency in the circuit. It is enough, for the occasion, however, that the point has been settled by decision since the cause before us was tried.

Nor is it material under the 27 Eliz., c. 5, that the plea contains no *direct* averment of an interest in the property insured. It is not to be denied that the want of such an averment would be fatal on special demurrer; for the 14 G. 3, c. 48, which enacts that insurance shall not be made by one who has not an interest in the property, seems to be declaratory of the common law; and it is unimportant that it is not in force here. Lord KING had held such an interest necessary so early as *Lynch* v. *Dalzell*, (4 *Bro. P. C.* 431), and Lord HARDWICKE had held the same thing in *The Sadlers' Company* v. *Badcock*, (2 *Atk.* 554). But independent of positive enactment, as insurance is now held to be a contract of indemnity and not of wager, it would be difficult to see how any one could claim compensation for a loss which he had not suffered. In *Pritchet* v. *The North American Insurance Company*, (3 *Yeates* 464), and *Craig* v. *Murgatroyd*, (4 *Yeates* 168), it was held that the leading principles of the 19 G. 2, c. 37, which requires an interest for the foundation of a marine insurance, have been adopted in Pennsylvania by commercial usage. Perhaps it might have been more accurately said, that the statute was designed to restore the original principles of the contract, which had been prostituted to gambling purposes by the insertion of the words "interest or no interest." These words never found their way into policies against fire, and as there was no necessity for a restorative, the 14 G. 3 was perhaps unnecessary. Lord HARDWICKE said, in *The Sadlers' Company* v. *Badcock*, that insurances against fire were introduced in later times, and that they differ from marine insurances in this very particular. At all events, it might be said that the leading principles of the 14 G. 3, like those of its marine fellow, have been followed by us in practice. So far the plaintiff's argument is incontrovertible. But though the plea in this instance contains no direct averment of interest, it contains a direct averment of loss which could spring from nothing but an interest. Grant that such a plea is argumentative, yet it is certainly good on general demurrer. It was to remedy such slips that the 27 Eliz., c. 5, required the party to put his finger on the very point. At the common law a demurrer confessed all things formally pleaded: since the statute, it confesses all things informally pleaded, which are helped by the 4 and 5 Anne, c. 16, and not specially set down as causes of demurrer. This is said to be the rule by the text writers, particularly Sergeant WILLIAMS, in *Hancocke* v. *Prowd*, (1 *Saund.* 337 *n.* 3), and it was so laid down

by Chief Justice KENT, in *Spencer* v. *Southwick*, (9 *Johns.* 314). The existence of an interest here was informally asserted; but as the demurrer was not a special one, it ought not to have been sustained.

Judgment reversed, and a *venire facias de novo* awarded.