## Fessler *versus* Love & Powell.

*Entire Contract, effect of Accepting part Performance of.*

1. If in an entire contract for the delivery of lumber in logs, the party entitled thereto, accept a part performance and make payment therefor in money and notes, the contractors have a right of action for the logs delivered, and can recover on the notes given therefor.

2. But the defendant may set off his damages for the non-delivery of the amount contracted for.

Error to the Common Pleas of *Lycoming county*.

This was an action of *assumpsit*, brought December 8th 1860, by Benjamin D. Love and Samuel Powell, doing business as Love & Powell, against P. G. Fessler.

The plaintiffs declared on two promissory notes of defendant, dated May 16th and 17th 1860, for $456.60, at six months, to which defendant pleaded *non assumpsit* and payment with leave, &c.

The special matter relied on as a defence was as follows:—

That the notes or writings on which plaintiffs claim were given in pursuance of an agreement in writing between the parties, dated the 10th day of October, A. D. 1859, for the delivery of two millions of feet or more of white pine logs, at the mouth of Little Clearfield creek, in the spring of 1860, in time for the drives as they pass the mouth of the creek for the Susquehanna boom, as therein specified *pro ut* said agreement, that said Love & Powell failed to deliver said two millions of feet of lumber, in logs, at the mouth of the Little Clearfield creek, as covenanted in said agreement, on their part, whereby the said defendant became greatly damnified, and suffered loss, and in consequence of said non-performance of the contract on the part of the plain-

tiff, the defendant lost the profit or difference in the price agreed upon to be paid for the logs, and the price for which they could have been sold at that time, if they had been so delivered, and also the amount of profit and manufacturing the same upon his mill near Jaysburg, at the Susquehanna boom; also, that for the want of said stock defendant's saw-mill was compelled to stand idle at great expense.

The contract was as follows :—

"Article of agreement made between B. D. Love and S. Powell, of Clearfield county, in the state of Pennsylvania, of the one part, and P. G. Fessler, of Williamsport, in the county of Lycoming and state of Pennsylvania, of the other part, as follows, to wit :

"The said Love & Powell agree to deliver two millions of feet or more of white pine logs, at the mouth of Little Clearfield creek, in the spring of 1860, in time for the drives as they pass the mouth of the creek for the Susquehanna boom. The party of the first part also agrees to get a merchantable quality of logs, which logs are to be got out in a workmanlike manner, and the said logs to be measured straight, sound, and clear of shakes, no logs to be measured less than twelve inches at the small end; all logs to be peeled above fifteen inches, which logs are to be measured by a competent man, on the banks of the little creek, and calculated by the rule. The scaling is to be paid by the parties at equal rates.

"The said P. G. Fessler, of the second part, agrees to pay to Love & Powell three dollars and seventy cents per M. for each thousand feet delivered at the mouth of the said creek, which payments are to be as follows :—One dollar and twenty-five cents per M. on or before the 10th day of March 1860, and seventy-five cents per M. when said logs are delivered in said boom, and the residue in two equal payments of three and six months, which two last payments are to take effect immediately after the delivery of the said logs in the said boom. The two last payments are to be put in notes of three and six months. The said P. Fessler also agrees to furnish supplies, at cost and freight, at Milesburg. No logs to be cut less than sixteen feet unless it cannot be avoided on the account of the waste of timber.

"In witness whereof we have hereunto set our hands and seals this 10th day of October, A. D. 1859.

         "Signed,          "P. G. FESSLER. [L. S.]
                             "LOVE & POWELL. [L. S.]

"In presence of Z. H. LAMBERT.

"Received, Williamsport, October 10th 1859, $5 on the within agreement.

         "Signed,          "LOVE & POWELL,
                                 "Per POWELL.

[Fessler *v.* Love & Powell.]

"May 17th 1860.   Receipt for $3974.34, including the two notes in suit on account of contract.

"Signed,                         "LOVE & POWELL."

The offer to prove this as an equitable defence to the plaintiffs' claim was rejected by the court below, and the jury were instructed to find for the plaintiffs the amount of the notes and interest, which was done.

The case was thereupon removed into this court by the defendant, by whom the ruling of the Common Pleas was assigned for error.

For the plaintiff in error it was contended that as it was admitted that the notes were given in part consideration of the covenant or agreement in writing to "deliver at the mouth of Little Clearfield creek the quantity of two millions of feet and upwards of white pine logs, in the spring of 1860, in time for the drives as they pass the mouth of the creek for the Susquehanna boom," which drives passed at said point about the 12th day of April 1860, and the whole amount then and there delivered did not exceed the one-half the amount agreed to be delivered by the plaintiffs to the defendant, the latter should have been allowed to set off his loss or damage sustained in consequence of the non-fulfilment of contract on the part of plaintiffs below.   Arising from the same contract, the notes on which suit was brought given to secure the payment on the part of Fessler, were no better in the hands of Love & Powell than the contract itself.   The claim of set-off is in the same right, and that it was evidence of loss or damage to show the value of the logs at the point or place designated in the contract: citing Chambers *v.* Jaynes, 4 Barr 43; Boon *v.* Eyre, 1 H. Black. 273; Ligget *v.* Smith, 3 Watts 331; Preston *v.* Finney, 2 W. & S. 53; Wilhelm *v.* Caul, 2 Id. 26.   The pleadings and the notice of special matter in this case present the parties before the court and jury as if suit had been brought upon the contract, and was so treated by the plaintiffs below.   The court below seemed to think that where a contract is entire the plaintiff could recover not only without showing a performance of all that was stipulated on his part to be performed, but that the defendant had no right to show the damages he sustained in consequence of non-fulfilment on part of plaintiff, which was error: Holler *v.* Heiner, 3 Harris 242; Eshel *v.* Murphy, 3 Id. 488; Hubbard *v.* Wheeler, 5 Id. 425; Falcon *v.* Smith, 6 Id. 132; Harris *v.* Legget, 1 W. & S. 306; Klett *v.* Claridge *et al.*, 7 Casey 106.

Time and quantity were the essence of this contract, and were all important to the defendant, whose mill was below the boom mentioned in the contract.

[Fessler *v.* Love & Powell.]

*C. D. Emery* and *J. W. Heylman*, for defendants in error.—— Under the pleadings and notice of special matter, the defendant below stood before the court asking to set off unliquidated and speculative damages against the notes which he had given in payment for that part of the lumber which had been delivered by plaintiffs. When the $3974 32 in money and notes were paid by Fessler, Love & Powell had delivered to him about one million one hundred thousand feet at the mouth of Little Clearfield creek. This sum would be the contract price of the lumber, and shows that it was to be paid for as delivered, and that the contract was not entire. Can he now be allowed to set off his unliquidated damages arising from the non-performance of the whole contract, against notes given in payment for so much of the contract as had been fulfilled?

The defendant proposed to prove a loss of supposed profits, which is too remote to form a basis for the calculation of damages: Masterton *v.* Mayor of Brooklyn, 7 Hill 62; Blanchard *v.* Eby, 21 Wend. 342; Bell *v.* Cunningham, 3 Peters 85; Gilpins *v.* Consequa, Pet. C. C. 85; Farmers' Bank *v.* McKee, 2 Barr 318.

There is no evidence that Fessler ever made any demand on Love & Powell to furnish the balance of the lumber, or that either party considered the contract as otherwise than as rescinded at the time of giving the notes.

The Pennsylvania Defalcation Act of 1705 appears to embody the same principle as the general English statutes of set-off, 2 Geo. 2, c. 22, § 13, and 8 Geo. 2, c. 24, § 4, which only give a set-off in case of mutual debts, that is, of ascertained money demands.

In the cases cited by the plaintiff in error, the facts were entirely different from these now under consideration.

In Falconer *v.* Smith, 6 Harris 132, the notes were given upon a contract for machinery previously to the machinery being delivered, and the defence was, a previous warranty, defective manufacture, and consequent failure of consideration.

In Hubbard *v.* Wheeler, 5 Harris 425, suit was brought to recover one-half the profits of a certain commission business, and Hubbard's defence was that Wheeler had not given his personal attention to the business, or endeavoured to influence consignments as agreed upon by the contract.

In Liggett *v.* Smith, suit was brought to recover compensation for building a warehouse, and the defence was that the work was defectively done.

In Wilhelm *v.* Caul, 2 W. & S. 26, defendant dispensed with the performance of part of the contract (as is claimed in this case), and it was ruled that plaintiffs might recover for the work actually done.

[Fessler *v.* Love & Powell.]

The opinion of the court was delivered, October 8th 1862, by WOODWARD, J.—If the agreement of 10th October 1859 be regarded as an entire contract, which is perhaps the sound view to take of it, the defendant destroyed its entirety by accepting the plaintiffs' part performance, and making payment therefor in the money and notes of 17th May 1860. The consequence of this was to give the plaintiffs a right of action for the logs delivered. Fessler might have stood upon the agreement and demanded full performance, and then nothing less than substantial performance on the part of the plaintiffs could have given them a right of action, but having severed it he is bound to pay, according to the agreement, for what he accepted.

But if he was damnified by the non-feasance of the plaintiffs, why may he not set off his damages against their cause of action? The severance of the entirety of the contract did not release them from its obligation. They were bound to furnish two million feet of logs, and, failing in whole or in part, Fessler had a right of action for his damages; and as set-off is in the nature of a cross-action, and is favoured as preventing circuity, it would seem that the defence which was offered ought to have been received.

The reasons of the learned judge for rejecting it are not given upon the record, and so far as we can gather them from the argument, they do not strike us as satisfactory. It cannot be said that the settlement of 17th May 1860 estops the defendant. The payments of that date were not a release of the contract, but were made on account of it, and the effect of them, as already intimated, was to give the plaintiffs what, else, they would not have had, a right to sue for partial performance of an entire contract, but they cannot be treated as defeating the defendant's cause of action for the non-performance of the plaintiffs.

Nor is the defence excluded by the circumstance that the suit is upon the notes instead of the contract itself. The notes, like the cause of action attempted to be set off, grew out of the contract, and are inseparably connected with it. In the leading case under our statutes of set-off, Steiglman *v.* Jeffries, 1 S. & R. 478, the action was upon a promissory note given for burr-stones, and the defendant was permitted to set off his damages resulting from a special contract of warranty. The rule laid down there was that when the cause of action which the defendant wishes to set off arises from the same transaction as that on which the plaintiff founds his action, he may have the latter decided by the same jury. And see Gogel *v.* Jacoby, 5 S. & R. 122; Shaw *v.* Badger, 12 Id. 276; Bayne *v.* Gaylord, 3 Watts 301; McFadden *v.* Irwin, 2 Wh. 37; Preston *v.* Finney, 2 W. & S. 53. But this court has gone so far as to declare that an unliquidated cross-demand, arising from a *distinct* and *independent* contract from

[Fessler *v.* Love & Powell.]

that on which suit is brought, is the subject of set-off: Cannon *v.* Franklin Fire Insurance Company, 6 W. & S. 155, and Ellmaker *v.* Same Company, 6 W. & S. 439.

Whichever source the rule be derived from, whether from those cases that require the set-off to arise out of the same transaction, or from those adjudications that impose no such limitations, it is evident the defence offered in this case was improperly rejected.

And the suggestion that the damages claimed by the defendant are too remote to be set off, is answered by these authorities. They cannot be too remote if they grow out of the same transaction as the plaintiffs' claim. The transaction which was the common source of both causes of action was the contract for the sale and purchase of the timber logs, and it is allied equally near to both.

Another suggestion is that Fessler made no demand on Love & Powell to furnish the balance of the lumber. The contract was the demand. No other was necessary. Again it is said the defendant did not offer to show that the balance of the logs had never been delivered. If the plaintiffs' can show that they were delivered, it will be an excellent answer to the defendant's claim of damages.

We say nothing about the measure of damages, because that question is not upon the record.

> The judgment is reversed, and a *venire facias de novo* is awarded.