# Quigley *versus* De Haas.

1. Although any material parol alteration or modification of a contract under seal constitutes the specialty part of a new verbal agreement which must be enforced by an action of assumpsit and not by an action of covenant, such is not the effect of a mere waiver of a stipulation in said contract. In the latter case there is no such alteration of the specialty as will constitute a new parol contract; hence, the proper remedy is an action of covenant.

2. A. agreed by writing under seal to do certain work for B. & C. who by the same instrument agreed to pay him a sum certain therefor. D. was, by the terms of said instrument, to be judge whether the work was done according to contract. A. did the work, and B. on inspecting it, pro-

[Quigley *v.* De Haas.]

nounced it satisfactory, with the exception of a few defects which he desired A. to remedy. B. then further promised A. that if those defects were remedied he should be paid. A. did remedy the defects, and not receiving his money from B. went to C. who told him he thought that B. would pay, but that he (C.) had sold out his interest in the matter. A. having afterwards brought an action of covenant against B. & C., *Held*, that defendants had, by promising to pay A. upon his remedying the specified defects, waived the stipulation in the contract requiring D.'s approval of the work, and that therefore plaintiff was entitled to recover without proof of such approval. *Held*, further, that the action was properly brought in covenant and not in assumpsit.

3. What was sufficient evidence to submit to the jury from which such a waiver as has been above described might be inferred, considered and commented on.

4. A contract under seal to build dams upon a certain creek provided that the dams should be constructed "in a good and substantial manner, as flood dams should be built in such streams, cribbed, sparred, &c." *Held*, that parol evidence was admissible to explain the understanding of the parties at the time of the execution of said contract as to how the dams were to be built.

June 9th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Common Pleas of *Clinton county:* Of May Term 1880, No. 120.

This was an action of covenant by John P. De Haas against A. J. Quigley and Joseph H. Bailey, upon a contract under seal, whereby plaintiff undertook to clear out for defendants a certain creek known as Young Woman's Creek, and to erect dams, cribs and a lumber chute thereon, and defendants undertook in consideration of said services to pay to plaintiff the sum of $4,050, and whereby it was further agreed that one John M. Mason should be the judge of whether the work was done according to contract.

The original narr. set forth the contract at length, and averred a full performance by the plaintiff of his part thereof, and also a failure by defendants to comply with their part thereof. Defendants pleaded "non est factum" and "covenants performed, absque hoc."

On the first trial of the cause a verdict was rendered for plaintiff in the sum of $1001.41, and judgment entered thereon. Defendants, however, taking a writ of error, the judgment was reversed by the supreme court and a venire facias de novo awarded (see Quigley *v.* De Haas, 1 Norris 267). After the record was remitted an amended narr. was, by leave of the court, filed by the plaintiff, which set out, in addition to the averments of the former narr., that on August 23d 1871, defendants had verbally agreed with plaintiff that, upon his taking out certain trees,

[Quigley *v.* De Haas.]

throwing in certain dirt on the top of a dam, and doing certain other work, plaintiff's work in clearing, damming and cribbing the creek would be satisfactory to defendants, and that they would pay him according to the terms of the contract.

The amended narr. then further averred that plaintiff had taken out the trees, thrown in the dirt and done the other work stipulated by defendants, but that defendants had, nevertheless, refused to pay him according to the terms of the contract.

On the trial, before MAYER, P. J., the plaintiff testified that he had done the work stipulated in the contract. and had received therefor on account from defendants between $2,100 and $2,200. That shortly after the completion of the job the defendant, Bailey, accompanied by Mason, went with plaintiff down the creek to inspect the work which had been done. That Bailey pointed out a place where he wished an alteration in a chute constructed by plaintiff, and that Mason advised the placing of a little more dirt on a certain dam, and also the cutting down of certain trees. That plaintiff then asked Bailey whether, if those alterations were done, the work would be satisfactory, and that Bailey replied that it would, and that he would then settle with plaintiff. That plaintiff accordingly made the desired alterations, but failed to obtain his pay from Bailey. That he thereupon went to defendant, Quigley, and told him that he feared he was going to have trouble, to which Quigley replied that he didn't think he would have any trouble, but that he (Quigley) had no interest in the matter, having sold his interest to Mason. Plaintiff was corroborated in his story by an employé of his named Williams, who testified that he heard defendant, Bailey, say that the job was a good one.

The contract, which was offered in evidence, provided that the dams should be built "in a good and substantial manner, as flood dams should be built in such streams, cribbed, sparred, puddle-ditched, calked and graveled." Plaintiff offered to prove what was said at the time of the execution of the contract as to how the dams should be built. Objected to by defendants as incompetent and irrelevant. Objection overruled. Evidence admitted. Plaintiff then gave testimony to show that it had been verbally agreed that just such dams as he had constructed should be placed on the creek.

Defendants altogether denied the truth of plaintiff's evidence, and testified that the work done was inferior to that called for by the contract.

Defendant Bailey testified that his purpose in going down the creek with plaintiff and Mason was solely to satisfy the latter that the work was not done in accordance with the terms of the contract, so that he might prevent the same from being

taken off plaintiff's hands. He therefore, he said, pointed out the defects to Mason only, and made no promise to plaintiff of payment on his remedying of those defects. He had not wished, he said, to get into a controversy with the plaintiff. Mason, being called as a witness, substantially corroborated Bailey in his account of what passed on the creek, stating that no promise of payment was made to plaintiff on condition of his remedying the defects. He testified also that the work done was not in accordance with the terms of the contract. Defendants requested the court to charge, inter alia :

That there had not been sufficient testimony produced to the jury to submit to them the question whether Bailey and Quigley waived that clause in the contract which proved that Mason should be the judge of whether the work was done according to the terms of the contract. *Refused.*

Also, that under all the evidence in the cause the plaintiff has not established a right to recover, and the verdict should be for defendants. *Refused.*

The court charged, inter alia, as follows :

" The judgment of Mason was necessary, in order that the plaintiff can recover at all upon the contract. And if De Haas would avoid this stipulation in the agreement and maintain this suit, he must prove clearly, and to the satisfaction of the jury, that this stipulation was waived by the defendants. We have concluded to submit to the jury for their determination, the evidence upon the question of waiver, and it will be for them to find from that evidence whether any such arrangement was made between De Haas and the defendants, by which the work was to be accepted and the judgment of Mason dispensed with. There is a conflict between the testimony of De Haas and Bailey which it will be the province of the jury to settle and determine. . . . . . . Should they determine that there has been such a waiver, it will then be necessary for them to determine from the evidence whether the plaintiff has shown that he fully performed the contract, in accordance with its terms and stipulations. If he has, then the plaintiff is entitled to recover the contract price, deducting from it all payments made by the defendants upon the contract, and allowing them deductions for any immaterial defects or imperfections in the manner of doing said work. If, however, the plaintiff has not shown a substantial performance of the work, he is not entitled to recover anything, for the law casts upon him the burden of showing that he has fully performed his agreement before he can recover anything."

Verdict and judgment for the plaintiff in the sum of $1,518.86. Defendants thereupon took this writ, assigning for

error, inter alia, the admission of plaintiff's testimony as to the verbal understanding at the time of the execution of the contract as to how the dams were to be constructed, and also the refusal of the defendants' points above cited.

*C. S. McCormick*, for plaintiff in error.—The opinion of the Supreme Court in this very case on a former writ of error shows conclusively that plaintiff was not entitled to recover without proving Mason's approval of the work which had been done: Quigley v. De Haas, 1 Norris 267.

Plaintiff's amended narr. sets out an entirely new cause of action founded solely on the parol agreement. The proper form of action is therefore not covenant but assumpsit: Vickary v. Moore, 2 Watts 456; Irwin v. Shultz, 10 Wr. 76; Lehigh Coal and Nav. Co. v Harlan, 3 Cas. 442; Ellmaker v. Franklin Fire Ins. Co., 6 W. & S. 439; Lawall v. Rader, 12 Harris, 283; Carrier v. Dilworth, 9 P. F. S. 410; Collins v. Barnes, 2 Norris 15.

There was no sufficient evidence of a waiver by the defendants to submit to a jury. Parol testimony to change a written contract must be clear, plain and explicit: Martin v. Berens, 17 P. F. S. 462; Battles v. Laudenslager, 3 Norris 452.

Evidence as to the parol understanding at the time of the execution of the contract was clearly inadmissible. The whole contract of the parties must be presumed to have been committed to writing.

*Seymour D. Ball* and *Kress* and *McKee*, for the defendant in error.—One party to a contract under seal may waive a provision introduced into it for his benefit without changing it to a parol contract: McCormick v. McKennan, 2 W. & S. 216; Ellmaker v. Franklin F. I. Co., 6 W. & S. 439; Monocacy Bridge Co. v. American Iron Bridge Manufacturing Co., 2 Norris 517. The cases cited by plaintiffs in error are those where the nature and scope of the contract had been wholly changed. At any rate, the courts are very liberal in regard to amendments in the form of action, provided that no new cause of action is introduced: Fritz v. Heyl, 8 W. N. C. 375. The plaintiff could therefore maintain covenant. The evidence as to waiver was ample, and was clearly admissible: Lippincott v. Whitman, 2 Norris 244; Barnhart v. Riddle, 5 Casey 97. The evidence as to the parol agreement contemporaneous with the execution of the contract was admissible to show what the parties meant by the terms of that contract.

[Quigley v. De Haas.]

Mr. Justice GORDON delivered the opinion of the court October 3d 1881.

Any material parol alteration or modification of a contract under seal necessarily constitutes the specialty part of a new verbal agreement that cannot be enforced by an action of covenant : Carrier and Baum v. Dilworth, 9 P. F. S. 406. The reason of this is obvious : the specialty, as such, no longer exists ; it has itself become but an element of the subsequent parol arrangement ; but an inducement for the more recent contract, and must, therefore, be enforced by an action of assumpsit. But it by no means follows that the waiver of one or more of the stipulations of a sealed agreement produces such an effect, for in such case, the waiver neither destroys the original contract nor makes a new one, but only affects its execution. If A. should contract in writing, under seal, for a stipulated price, to build a house for B., and paint it, and B. should afterwards agree to release A. from the painting, we apprehend no one would say that there was in this such an alteration as would reduce the specialty to parol ; for the remedy must be founded on the original agreement, seeing there is none other. There is here no substitution of new terms and conditions for the old. Both parties are held to all the covenants of the specialty, except that one which has been waived, and to nothing else, hence, the only possible remedy is covenant. If authority for a proposition so plain as this is wanting, it will be found in the cases of McCombs v. McKennan, 2 W. & S. 216, and Ellmaker v. The Insurance Co., 6 W. & S. 439. Now, concerning the amendment made in the plaintiff's narr., which is complained of as introducing a new cause of action ; we find it amounts only to the setting out of the waiver of that part of the contract which required the judgment of John M. Mason upon the work as a condition precedent to the plaintiff's right of payment. In other words, it sets out what the jury have found to be the fact, that if the plaintiff would do certain items of work, which both Bailey, one of the defendants, and Mason, the arbiter, pointed out as necessary to complete the job, the contract should be regarded as fulfilled and the plaintiff should have his pay. This, certainly, was not a substitution of a new agreement for the old ; it was but a waiver of a single condition. So far as the substantial part of the contract was concerned, it altered it not in a single particular. It did not release De Haas from a strict performance of what he had to do about the work which he had undertaken, neither did it impose upon Quigley and Bailey what they had not previously agreed to do. We repeat, therefore, that the amended narr. does not set out a new contract, hence, no new cause of action. That the parties had the power to waive

this part of their contract, was intimated in our opinion when the case was here before, but without this, that the parties to a contract may waive any part or the whole of it, if they see fit so to do, is a proposition requiring no discussion.

On this branch of the case the only remaining question is, whether there was evidence sufficient to submit to the jury from which an acceptance of the work might properly be inferred. De Haas swears, that at or about the time when, as he considered, the job was finished, or nearly so, Bailey and Mason made an inspection of the work, and pointed out certain things which they thought necessary to perfect the contract—such as the cutting out of some trees and the putting of some more earth on the toe of a ditch. He then asked Bailey whether the job would be satisfactory to him when the work pointed out was done, and the answer was that it would be. He further says that under this arrangement Bailey left with the understanding that they were to have a settlement in a few days. Immediately afterwards he proceeded to finish what had been pointed out for him to do, but found that he was not able to bring Bailey to the promised settlement. He then spoke to Quigley, and told him he was afraid there was going to be trouble, but Quigley thought not, but said he no longer had any interest in the matter, as he had sold out to Mason. Then in confirmation of this narration of De Haas, we have the testimony of John Williams, who says Bailey told him the job was a good one. It is true that this is denied by the defendants, but the jury, as they had a right to do, believed De Haas. With this we have nothing to do ; our question is, whether this evidence, with the attendant circumstances, was sufficient, if believed, to support the hypothesis of the plaintiff. We think it was. For why did Bailey, in consideration of the performance by De Haas of certain specific things, pointed out by himself and Mason, agree to accept and settle for the job, if he intended to insist on the umpireship of Mason? He certainly thereby induced De Haas to believe that he had waived this part of the contract, and if he did so deliberately he ought to be held to it. His own testimony, if not confirmatory of that of the plaintiff, nevertheless, exhibits so much of unfairness, so great a disposition to prevent an impartial judgment of the umpire, that we are not surprised that the jury gave it no credence. In answer to the question whether he had not pointed out to De Haas the objectionable and unfinished parts of the work at the time he visited them in company with Mason, he says he did not, that he pointed them out to Mason. "I wanted," he goes on to say, "to satisfy Mr. Mason that the work was not in accordance with the contract, and went there for that purpose. I had told Mr. Mason before

[Quigley v. De Haas.]

I went there it was not satisfactory." Then, in answer to the question, "Your purpose was to prevent its being taken off the hands of De Haas? The answer is, "Yes sir." The frankness of all this is certainly admirable, but the honesty of the transaction is not so commendable. And what must we think of an umpire who would allow his judgment thus to be forestalled; who would submit to be made the mere tool of either of the parties? How, after this, could the plaintiff expect an impartial judgment from, or how could a court of justice require him to resort to the decision of an umpire who had thus been manipulated? Had De Haas been informed of the purpose for which Mason had brought upon the ground he might have had some slight chance for defence, but care was taken that he should not have this information, for, as Bailey says, "I did not want to get into a controversy with De Haas." The design seems to have been simply to post Mason on the defects of the job, and then leave De Haas to the tender mercies of an umpire who had prejudged and condemned his work. That Bailey did accomplish his purpose as to the umpire is obvious, for he says after he and Mason had ridden· over the job he, Mason, informed him that it was impossible for De Haas to crib the creek according to the contract. Under circumstances of this kind, about which there can be no doubt, since they are detailed by one of the defendants, it is idle to talk about requiring De Haas to resort to the judgment of an umpire from whom, in consequence of the manipulations of the defendants, he could obtain nothing but an adverse decision.

This conduct of Bailey forever estops him and his partner from setting up this part of the contract to defeat the plaintiff. When, therefore, the court submitted this part of the case to the jury on the question of waiver, it not only did that which the evidence justified it in doing, but also that which was the best for the defendants, and of which, therefore, they ought not to complain.

There was exception taken to the ruling of the court in permitting the introduction of parol evidence to explain the understanding of the parties at the time of the execution of the contract, as to how the dams should be built; but we think this was proper. By the contract these dams were to be built "in a good and substantial manner, as flood dams should be built in such streams, cribbed, sparred, puddled-ditched, calked and graveled." To us it seems obvious that, in order to make this intelligible to a jury, some explanation was necessary, either from experts or from the understanding of the parties expressed at the time of the making of the contract, but of these two methods of arriving at the meaning of this agreement, the

latter was the better, as being the interpretation given to it by those most interested, hence, the one which would be the most likely to express their intention.

We have discovered nothing else in the assignments requiring comment.

Judgment affirmed.