## Fischer v. Solomon

Before McBride, Harkins and Brown, JJ.
*Jacob Shulgold*, for plaintiff.
*John J. McGrath*, for defendant.

BROWN, J., January 17, 1951.—This matter is before the court en banc on motion of counsel for plaintiff raising the following preliminary legal objections to defendant's answer:

1. Defendant Milton Solomon, trading as Mt. Albion Service Station, has failed to register under the Ficti-

tious Names Act of May 24, 1945, P. L. 967, 54 PS §28.1.

2. The allegation and claim in the seventh paragraph of defendant's answer is for a claim arising out of and sounding in tort, and as such cannot be set off against plaintiff's claim in assumpsit.

Plaintiff's counsel, in his brief, abandoned the objection raised under the first question just recited, and confines his argument to the second question, to wit, that the counterclaim filed by defendant should be dismissed and the preliminary objections raising question of law should be sustained for the reason that defendant's counterclaim is in conflict with the provisions of Pennsylvania Rule of Civil Procedure 1031, hereinafter more fully set forth.

Plaintiff sued in assumpsit for certain sums of money alleged to be due him from defendant, on the following set of facts. Defendants are engaged in the business of selling automobile oil and gasoline, and automobile accessories, and maintain, own and operate a service station in the City of Pittsburgh under the name of Mt. Albion Service Station. On August 18, 1948, plaintiff advanced the sum of $100 to defendants, and on September 27, 1948, advanced to defendants an additional sum of $300, or a total of $400. On August 18, 1948, plaintiff was employed by defendant as an attendant at defendants' service station and was promised a wage of $25 a week. Plaintiff worked for defendant until April 15, 1949, or a period of 33 weeks and 5 days, during which time he earned the sum of $845. Plaintiff helped to repair and paint a certain Studebaker automobile, which defendant sold and made a profit of $100. Defendant had promised plaintiff one half of the profit on this sale, which amount was $50, that the sum owing plaintiff from defendant, by virtue of the foregoing transac-

tion, amounted to $1,345, of which plaintiff received the sum of $150 from defendant, leaving due him a balance of $1,195,* for which this suit was brought.

Defendants filed several answers. Defendant Eleanore Solomon, in her separate answer, denies that she has any ownership in the Mt. Albion Service Station, that she received any money from plaintiff, or that she had any contract with plaintiff for work of any kind; and avers that if defendant is owed any money, it is from Milton Solomon. Defendant Milton Solomon filed his separate answer, and in addition set forth a counterclaim, which is the subject of this controversy.

The answer of defendant Milton Solomon avers that he is the owner of the service station mentioned above; that plaintiff did advance to him the $400, but that he has paid the $400 in cash to plaintiff under the arrangement set forth in the counterclaim, which will be mentioned later. Defendant denied that plaintiff was engaged to work at his service station at a wage of $25 per week; but, on the contrary, averred that plaintiff was hired on an individual job basis, to receive 50 percent of the net profit realized on the individual job relationship, that the individual jobs showed a net profit of $392.30, and that defendant Milton Solomon paid to plaintiff the sum of $196.15, which was 50 percent of the net profit of the individual jobs upon which plaintiff worked.

Defendant denies that he received a profit of $100 from the sale of the Studebaker automobile upon which plaintiff claimed he worked, and denies that he is indebted to plaintiff in the sum of $1,195 as claimed by plaintiff, but that the plaintiff is indebted to defendant in the sum of $701, as is set forth in defendant's counterclaim.

---

* The addition of plaintiff whereby he claims $1,195 is inaccurate, and should be corrected upon trial of this cause.

Defendant in his counterclaim demands this sum of $701 from plaintiff upon a cause of action in assumpsit, and in substantiation of his claim avers that defendant, on December 5, 1948, loaned his Chevrolet automobile to plaintiff; that plaintiff was involved in an automobile accident which totally destroyed defendant's automobile; that the value of the automobile was $650; that the same was totally wrecked and sold for junk, for $50, with the loss to defendant amounting to $600; that on December 8, 1948, plaintiff and defendant Milton Solomon agreed that the $400 which had been advanced to defendant Solomon, and which was mentioned as part of plaintiff's claim, should be applied to the damages suffered by defendant for the loss of his automobile, leaving a balance of $200 owing to defendant Milton Solomon.

Defendant's counterclaim further alleges that on September 1, 1948, and up until April 7, 1949, defendant Milton Solomon caused all of the laundry work for plaintiff to be done, under an oral agreement whereby plaintiff was to pay defendant Milton Solomon the sum of $3 a week for the service. The service was rendered for 32 weeks, and plaintiff paid nothing on account of this agreement, thereby becoming indebted to defendant Milton Solomon in the sum of $96.

The counterclaim further alleges that from October 1, 1948, until April 7, 1949, defendant, by virtue of an oral agreement, furnished plaintiff his meals on an oral agreement whereby plaintiff agreed to pay the sum of $15 a week, but that this agreement lasted for a period of 27 weeks, that plaintiff has paid nothing on this agreement, and is therefore indebted to defendant in the sum of $405.

Defendant, in his counterclaim for the sum of $701 has set up three distinct oral agreements. Plaintiff in his motion to strike the counterclaim from the record makes objection only to that part of defendant's setoff

or counterclaim which has to do with defendant's claim for his automobile damaged by plaintiff, amounting to the sum of $600.

The question involved here is whether or not defendant may assert in his counterclaim against plaintiff's complaint, matters set forth in the foregoing statement of facts.

Defendant relies on Rule 1031 of the Pennsylvania Rules of Civil Procedure, which provides as follows:

"(a) The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, or (2) which arises from contract or is quasi-contractual.

"(b) A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff."

Paragraph (*b*) of the rule is not material to the issue here involved.

A counterclaim is now to be regarded as the generic term including all claims and all forms of relief which can be asserted or demanded by defendant: 2 Anderson Pa. Civ. Pract. 464, 465. From this definition of "counterclaim" defendant may therefore set forth any number of counterclaims which he has against plaintiff in an action of assumpsit, provided the requirements of either subdivision (*a*)-(1) or (*a*)-(2) of Pa. R. C. P. 1031 are satisfied: 2 Anderson Pa. Civ. Pract. 465. His right to assert his defense as a counterclaim must fall in one of the two categories of the rule, to wit, that the matter arose from the same transaction or occurrence, or series of transactions or occurrences

from which plaintiff's cause of action arose; or that the matter arises from contract, or is quasi-contractual.

It may well be argued that defendant's counterclaim meets the test of the rule as to both categories. In Reo Motors, Inc., v. Wolf et al., 70 D. & C. 463, in the opinion handed down by Smith, J., January 3, 1950, we find an exhaustive explanation of Pa. R. C. P. 1046 as to the interpretation of the language used in both rule 1031, now under discussion, and rule 1046, having to do with what is meant by the term "the same transaction or occurrence, or series of transactions or occurrences". Inasmuch as this language is identical in both rules, it is our opinion that the interpretation of the language would be the same. The learned judge, in the Reo Motors case, supra, at page 470, quotes 47 Am. Jur. 742, 743 as follows:

" '. . . the term "transaction" is not legal and technical, but common and colloquial, and is therefore to be construed according to the context and approved usage, and that as so construed, it is broader than either "contract" or "tort", although it may include either or both. It has been defined as that combination of acts and events, circumstances and defaults, which viewed in one aspect results in the plaintiff's right of action, and viewed in another aspect results in the defendant's right of action, and, according to some authorities, it applies to any dealings of the parties resulting in wrong, without regard to whether the wrong is done by violence, neglect, or breach of contract. The term "same transaction" does not necessarily mean occurring at the same time. The "transaction" comprehended within the meaning of the codes is not limited to the facts set forth in the complaint, but includes the entire series of acts and mutual conduct of the parties in the business or proceeding between them which formed the basis of the agreement'."

In the case at bar the promise to pay in part, as alleged by defendant in his counterclaim for the damage to defendant's automobile, by cancelling the debt which defendant owed plaintiff, may well be considered a part of the same business or subject matter upon which plaintiff's suit arose. We point out, as stated in the definition in 47 Am. Jur. 742, 743, quoted supra, "the term 'same transaction' does not necessarily mean occurring at the same time", but as the learned court said in the Reo Motors case, supra, quoting from King v. Coe Commission Co., 93 Minn. 52, 100 N. W. 667, the test is that " 'the transaction is not necessarily confined by the facts stated in the complaint, but the defendant may set up new facts, and show the entire transaction, and counterclaim upon that state of facts as the transaction upon which plaintiff's claim is founded: 25 Am. & Eng. Enc. (2d Ed.) 589. The transaction refers not only to an occurrence or act, but to commercial or business transactions or dealing, something in the nature of a contract or a series of contracts with respect to the same business or subject-matter'."

We conclude, therefore, that defendant's counterclaim is well within the category as provided in rule 1031, as a matter arising from the same transaction or occurrence, or series of transactions or occurrences, from which plaintiff's cause of action arose.

However, rule 1031, supra, is satisfied if defendant's counterclaim meets the requirements of either of the two categories—that is—if the matter arose from the same transaction or occurrences, or series of transactions or occurrences from which plaintiff's action arose; or that the matter arises from contract or is quasi-contractual: 2 Anderson Pa. Civ. Pract. 471. It is to be noted that if defendant's counterclaim comes within the second category, or, to be explicit, if his counterclaim is based on contract or is quasi-contrac-

tual, it is immaterial when and in what manner the counterclaim arose: 2 Anderson Pa. Civ. Pract. 472; and it is immaterial whether the counterclaim be asserted for liquidated or unliquidated damages, even though the claim of plaintiff is liquidated: E. Keeler Co. v. Sanitary Family Wash Co., 60 D. & C. 525; Northwestern National Bank v. Commonwealth, 345 Pa. 192.

It is important here to note that this has been the law of Pennsylvania for many years, and is not changed by any recent rules. As early as 1843 Chief Justice Gibson said in Ellmaker v. Franklin Fire Insurance Co., 6 W. & S. 439, 444:

"If an unliquidated cross demand may be set-up when it has sprung from the same transaction—and we have constantly ruled that it may—why may it not be set up when it has sprung from a distinct and independent contract? The confusion incident to the trial of distinct issues in the same action is no greater where the demands are independent of each other than where they are connected; . . ."

The test, in this connection, as we are able to ascertain, is not whether the damages are liquidated or unliquidated; not whether defendant's counterclaim arises out of the same transaction or occurrence, or series of transactions or occurrences from which plaintiff's cause of action arose; but whether the counterclaim arises out of an action ex contractu; and this is true even though defendant may have a choice between an action ex delicto and an action ex contractu: Rothrock v. Wolfe, 99 Pa. Superior Ct. 30, as follows:

"It was held by the Superior Court in Weiner v. Schwartz, 87 Pa. Superior Ct. 551, in determining whether the defendant may aver certain facts as a counterclaim, the criterion is whether under these facts *he must bring an action of trespass, or may proceed in assumpsit.*" (Italics supplied.)

Where there is a contract, either expressed or implied, even though defendant may have an action in tort, he may waive the tort and claim on his counterclaim in assumpsit: Anderson Equipment Co. v. Findley, 350 Pa. 399; Boyer v. Bullard et al., 102 Pa. 555.

The destruction of defendant's automobile, as alleged by defendant in his counterclaim, may give rise to an action ex delicto, but this is not the cause upon which defendant enters his counterclaim, for he, defendant, has alleged that subsequent to the wrecking of the automobile, the parties entered into an oral agreement wherein plaintiff agreed to pay in part for the damages to the automobile by canceling out the loan which defendant admitted he owed to plaintiff. According to defendant, the parties endeavored to settle their dispute as to the loss of defendant's automobile in this manner, by mutual agreement, and since it is on this mutual agreement defendant bases his counterclaim, we consider the counterclaim contractual in nature and well within that category of Pa. R. C. P. 1031 which allows defendant's counterclaim to plaintiff's claim in assumpsit, if the cause of action or set-off arises from contract or is quasi-contractual.

We are in hearty accord with what was said by Sweney, J., in Walch v. Capriotty, 65 D. & C. 48, 50, as follows:

"The trend of modern procedure is to consolidate suits and the old legal barriers are being broken down in favor of quicker and more equitable relief. The differences between these parties may well be settled by one trial, at which all points of controversy are fully and fairly presented to the Court and jury."

For the reasons above given, we are of the opinion that defendant's counterclaim does not violate the provisions of Pennsylvania Rule of Civil Procedure 1031, and plaintiff's preliminary objections to the counterclaim of defendant are dismissed.