Roddy Realty, Inc. v. Cadillac Real Estate Co.

*Henry A. Giuliani* and *Donald M. Collins*, for plaintiff.

*Theodore L. Krohn*, for defendant.

PINOLA, P. J., December 21, 1966.—This is an action to enjoin defendants from interfering with plaintiff in its efforts to lease premises known as no. 486 Northampton Street, in the Borough of Edwardsville, and to require them to respond in damages for loss of rentals by plaintiff.

On November 4, 1966, a hearing was held on the ap-

plication by plaintiff to continue the injunction heretofore granted.

It was stipulated by counsel as follows:

"1. That the record in a prior case entered to No. 7 May Term, 1964, in Equity, is admitted in evidence in this case.

"2. That the pleadings in this matter are admitted in evidence insofar as the allegations are admitted.

"3. That no testimony will be necessary to determine the matter insofar as it relates to the prayer for injunctive relief, but that further testimony may be necessary at some future time with respect to the claim for damages".

Plaintiff is the owner of property no. 468 Northampton Street, Borough of Edwardsville, which, on August 17, 1959, it leased to one Marvin Mutnik, with right to assign to a corporation to be formed for a term of 15 years, renewable for an additional 10 years. This lease was assigned on September 16, 1959, to Wayne Stores, Inc., a New York corporation.

On January 31, 1963, plaintiff entered into another lease with Wayne Stores, Inc., for property no. 486 Northampton Street. The lot is 30 feet by 1,000 feet, and the building erected thereon is 30 feet by 220 feet. Lessor agreed to maintain a driveway 30 feet by 1,000 feet between this property and the one which is the subject of the 1959 lease.

In the 1959 lease, paragraph 1, the premises were leased "to be used for retail sales of every description except as excluded herein, and kindred services. . . . It is specifically understood and agreed that no part of said demised premises shall be used by the Lessee, sublessees, concessionaires, or leased departments, as a retail food store or retail food market; provided, however, that this shall not prevent the use of said premises for the sale of food to be consumed on the premises. . . ."

Part of paragraph 2 reads as follows:

"Lessor agrees that it will not use nor permit the use of the 30-foot parcel of land . . . and land in back of the land herein demised . . . nor any part thereof for any business or establishment in competition with that of the Lessee herein".

The 1963 lease follows closely the same language with respect to the use of the premises. In paragraph 1, the premises are leased "to be used for retail sales of every description except as excluded herein, and for kindred and allied services. . . . The Lessee covenants and agrees that no part of the said demised premises shall be used by it, its sub-lessees, concessionaires, or leased departments as a retail food store or retail food market; provided, however, that this shall not prevent the use of said premises for the sale of food to be consumed on the premises".

In paragraph 4, the rental of the premises is coordinated with the rental of the lease of 1959, so that the rental of both properties is treated as one. Under both leases, lessee has the right to assign the lease.

The term of the 1963 lease is significant. It is made for a period of 11 years and five months from the first day of February, 1963, and expires on June 30, 1974, the date of expiration of the 1959 lease.

Under paragraph 32, as in the 1959 lease, lessee has an option to extend the term for an additional 10 years' period. Practically, the two leases operate as one.

Apparently, the separate lease was drawn in 1963, instead of rewriting a lease for both premises, because at that time, unknown to plaintiff, Wayne Stores, Inc., had assigned the 1959 lease to Nathan Marcowitz as security for a loan.

Plaintiff contends that by execution of the 1963 lease, the negative covenant prohibiting sales in competition with business in the premises described in the 1959 lease expired.

Wayne Stores, Inc., filed a petition for an arrangement under chapter XI of the Bankruptcy Act of July 1, 1898, and on September 11, 1963, the lease dated January 31, 1963, was rejected, effective September 30, 1963, with the approval of the referee in bankruptcy. Such rejection accelerated all of the rentals due under the 1963 lease, but plaintiff made a settlement therefor and took possession of the premises.

In the spring of 1965, plaintiff alleges that it began negotiations with the Firestone Tire and Rubber Company for the rental of the premises no. 486 Northampton Street. It is also alleged that a lease was entered into on July 23, 1965, for the term of 20 years at a minimum monthly rental of $900 and that defendants interfered with the preparations for the use of the premises by the Firestone Company, threatening interruption of the use by legal action because the Firestone Company would engage in the sale of tires and automobile accessories, together with sundries, in competition with some departments in premises no. 468.

Defendants argue that the two leases were separate and independent of each other and that the rejection of the 1963 lease by the trustee in bankruptcy leaves the 1959 lease in full force and effect, including the negative covenant in question.

A preliminary injunction is to be issued when necessary to prevent immediate and irreparable harm which could not be compensated by damages and where greater injury would result by refusing the preliminary injunction than by granting it, and where the temporary injunction restores the parties to the status existing immediately prior to the allegedly wrongful conduct: Alabama Binder & Chemical Corporation v. Pennsylvania Industrial Chemical Corporation, 410 Pa. 214 (1963).

Because of the alleged unlawful action of the individual and corporate defendants, plaintiff contends

that it is losing each month an undetermined but substantial amount of rent and is in real danger of losing a valuable long-term lease. There is no reason to suppose that defendants would not make similar threats against any proposed lessee of the property involved in the Firestone lease. Plaintiff is, therefore, in the position of not being able to make any economic use of its property currently or in the future.

The injunction sought here is to forestall litigation or the threat of litigation by the individual and corporate defendants. Unless and until such threats stop, plaintiff will be unable to interest any possible tenant and will be unable to enter into a lease with any possible tenant. Especially after the alleged conduct of defendants with regard to the Firestone Company, plaintiff would be unable to open negotiations with possible tenants, and thus would not be in a position to know just how much the alleged unlawful acts of defendants were costing it in possible rentals. Since the Firestone lease is a percentage lease, it is impossible even to calculate the amount of rental lost because of the actions of defendants with regard to that lease. Adequate compensation by damages is, therefore, impossible.

Because of the alleged unlawful actions of defendants, the Firestone Company may enter into a long-term lease elsewhere unless affirmative action to suppress such unlawful actions is taken immediately. It is obvious that until a final determination of this matter, no long-term lease commitments will be made and, therefore, no substantial harm to defendants can come by the extension of the temporary injunction.

The findings of fact in the adjudication of the prior action included findings that the 1959 lease had been properly assigned to Wayne Stores, Inc., that the 1963 lease had been entered into between plaintiff and Wayne Stores, Inc., that the 1963 lease had been rejected in the bankruptcy proceedings, and that the no-

tice of the assignment of the 1959 lease to Nathan Marcowitz, trustee, had not been given to plaintiff until January of 1964.

The conclusions of law related only to the effect upon the 1959 lease of the breach of the 1963 lease, stating that such consequences had been waived and settled. The prior action is, therefore, not determinative in any way of this action.

A comparison of the clauses in the two leases leads us to the conclusion that the 1963 lease explicitly permits the use of the land involved for the purpose expressly prohibited in the 1959 lease. The terms of the two leases with regard to what use might be made of the premises were, therefore, not merely inconsistent, but contradictory, and since the two leases were made (in effect) between the same parties, necessarily the 1963 lease superseded the 1959 lease and wiped out the anti-competition clause therein.

"A contract between the same parties containing a term inconsistent with a term of an earlier contract is interpreted as including an agreement to rescind the inconsistent term in the earlier contract": Wathen v. Brown, 200 Pa. Superior Ct. 620 (1963). This same rule is stated in Williston, Contracts §1826 (rev. ed.) ; Restatement, Contracts §408; 6 Corbin, Contracts §1296.

In Prouty v. Kreamer, 199 Pa. 273, Justice Mestrezat, quoting from another case, declared at page 275:

"The test of collision, said Chief Justice Gibson in Ellmaker v. Franklin Fire Insurance Co., 6 W. & S. 439, 'was the capacity of the two contracts to be executed together' ".

At page 277, he said:

"It is apparent that the parol modifications were not an additional agreement, nor were they mere waivers of part of the covenants contained in the sealed contract. It is equally clear that the two contracts could be performed together".

Both cases were approved in Robert Grace Contracting Company v. Norfolk & Western Railway Company, 259 Pa. 241, where Justice Walling said at page 247:

"A new agreement will supersede the old so far as they cannot be executed together".

These two contracts could not operate together. When Wayne Stores became the lessee of the property no. 486 Northampton Street, the need no longer existed for protection against competition with the business conducted in premises no. 468. To this situation, we would apply the maxim cessante ratione legis, cessat ipsa lex.

The situation here is akin to an easement when a servient tenement becomes the property of the owner of the dominant tenement. When the ownership of both estates become vested in the one person, the easement is wiped out.

The easement is extinguished for the reason that the owner having the jus disponendi—the full and unlimited right and power to make any and every possible use of the land—all subordinate and inferior derivative rights are necessarily merged and lost in his higher right: 28 C. J. S. 720, §57.

As "no man can have an easement in his own land" (Obringer v. Minnotte Brothers Company, 352 Pa. 188), so, too, no man could have a negative covenant against himself.

When once gone, the negative covenant, as in the case of an easement could not be revived on separation of the two leases: McClure v. Monongahela Southern Land Company, 263 Pa. 368, 375.

We, therefore, conclude that when plaintiff resumed possession of premises no. 486 upon termination of the 1963 lease, there was no restraint on competition left which related to these premises.

Therefore, plaintiff has the right to lease them free

of any restraint on competition, and defendants have no right to maintain or threaten litigation under the restraint on competition clause in the 1959 lease.

Under the circumstances, we enter the following

ORDER

Now, December 21, 1966, the injunction entered on August 1, 1966, is continued in force and effect until final hearing.